Case 16-21847-GLT    Doc 50    Filed 09/30/16    Entered 09/30/16 14:46:16    Desc Main
Document    Page 1 of 12

FILED
9/30/16 2:31 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 16-21847-GLT |
| **JOHN MICHAEL CHAIN,** | Chapter 13 |
| Debtor. | |
| **RONDA J. WINNECOUR, ESQ.,** | Related to Dkt. Nos. 19, 22, 28 and 30 |
| Movant, | |
| v. | |
| **JOHN MICHAEL CHAIN,** | |
| Respondent. | |

## MEMORANDUM OPINION

The Debtor, John Michael Chain, commenced a chapter 11 bankruptcy case that was later converted to a case under chapter 7. After he received a discharge, but before the chapter 7 trustee could liquidate the estate's assets, Chain filed a new bankruptcy case seeking relief under chapter 13 of the Bankruptcy Code. Through this effort, Chain seeks to liberate his residence from the chapter 7 estate by curing and reinstating his mortgage through a chapter 13 plan. These actions have spawned a flurry of motions, including motions to dismiss by each trustee,[1] a motion to disqualify debtor's counsel,[2] and a motion for abandonment of property.[3]

---

[1] See the *Trustee's Motion to Dismiss* filed by Ronda J. Winnecour, the chapter 13 trustee, and the *Chapter 7 Trustee's Motion to Dismiss Case with Prejudice* filed by Charles O. Zebley, Esq., the chapter 7 trustee. Dkt. Nos. 19 and 28.

[2] See the chapter 13 trustee's *Motion to Disqualify Debtor's Counsel and for Disgorgement of Retainer Fee.* Dkt. No. 22.

[3] See *Chapter 7 Trustee's Motion to Abandon Assets.* Dkt. No. 30. In the pending chapter 7 case, Chain filed a motion requesting that the chapter 7 trustee abandon his interest in the residence located at 42 Fifth Avenue in Scottdale. Case No. 14-23630-GLT, Dkt. No. 258. Subsequently, the chapter 7 trustee filed a

After considering the arguments raised by the parties, Chain's chapter 13 bankruptcy case will be dismissed for the reasons that follow.

## I.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). This *Memorandum Opinion* constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Upon consideration of the motions, the supplemental pleadings filed by the parties, and the legal argument presented at the hearing, the matter is ripe for adjudication.

## II.

On September 7, 2014, Chain filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[4] Approximately one year later, the chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code and a chapter 7 trustee was appointed. In accordance with Bankruptcy Rules 1019(1)(B) and 1007(b), Chain filed his *Statement of Intention*[5] indicating his intent to surrender five parcels of real property[6] while retaining three other parcels[7] and some personal property. Chain received a chapter 7 discharge on January 11, 2016.[8]

---

motion to compel the turnover of Chain's residence. Case No. 14-23630-GLT, Dkt. No.0 263. Both motions were addressed in separate orders.

[4] In making these findings, the Court takes judicial notice of the docket in both the current case and in Chain's pending chapter 7 proceeding at Case No. 14-23630-GLT.

[5] Case No. 14-23630-GLT, Dkt. No. 203.

[6] Dkt. No. 203. The *Statement of Intention* indicated that Chain was surrendering real property at the following locations: (1) 250 Brown Street, Everson, PA; (2) 129-130 Main Street, West Newton, PA; (3) 129 Pittsburgh Street, Scottdale, PA; (4) 225-227 Pittsburgh Street, Scottdale, PA; and (5) 207 Lou Street, Scottdale, PA.

2

Five months after the case was converted, the chapter 7 trustee entered into a carve-out agreement (the "Carve-Out Agreement") with Scottdale Bank & Trust Company ("Scottdale") by which he agreed to liquidate all of Chain's real property encumbered by Scottdale's mortgage liens.[9] For its part, Scottdale agreed to provide the chapter 7 trustee with a sufficient portion of the sale proceeds to cover the fees and expenses of the chapter 7 trustee and his professionals, as well as fund a $10,000 distribution for creditors of the estate (excluding Scottdale).[10] The parties also agreed that the chapter 7 trustee would continue to collect all rents accruing on the properties until they were sold or abandoned.

The motion to approve the Carve-Out Agreement was served on both Chain and his attorney, but neither one raised an objection to the motion or appeared at the March 31, 2016 hearing when the motion was under consideration.[11] After obtaining satisfactory answers to its inquiries, the Court entered an Order approving the Carve-Out Agreement (the "Carve-Out Order").[12]

While the chapter 7 case remained pending, Chain filed this bankruptcy case under chapter 13 of the Bankruptcy Code on May 16, 2016. The schedules in this subsequent case identify the same real property slated for liquidation in his chapter 7 estate. On June 3,

---

[7]    Id. The *Statement of Intention* indicated Chain's desire to retain the real property located at: (1) 208-220 Pittsburgh Street, Scottdale, PA; (2) 42 Fifth Avenue, Scottdale, PA; and (3) 224 North Broadway, Scottdale, PA.

[8]    Dkt. No. 226.

[9]    Case No. 14-23630-GLT, Dkt. No. 228 at Exhibit A, ¶¶ 1-2.

[10]   Case No. 14-23630-GLT, Dkt. No. 228 at Exhibit A, ¶ 5.

[11]   Case No. 14-23630-GLT, Dkt. No. 229.

[12]   Case No. 14-23630-GLT, Dkt. No. 241.

2016, Chain filed his chapter 13 plan of reorganization.[13] The plan provides for the payment of two secured claims held by Scottdale, the retention of his residence, and the surrender of all other real property. The tax claims of the Pennsylvania Department of Revenue, the Pennsylvania Department of Labor & Industry, the Westmoreland County Tax Claim Bureau, and the Internal Revenue Service are addressed in the chapter 13 plan.

Because the outcome of the chapter 13 trustee's motion to dismiss will necessarily affect the outcome of the other motions, the Court will first consider whether Chain may proceed with his chapter 13 case while a chapter 7 case remains pending.

### III.

The Bankruptcy Code and Bankruptcy Rules do not expressly prohibit a debtor from having two bankruptcy cases pending at the same time. In the absence of direct statutory authority, courts uniformly agree that a debtor cannot maintain two active bankruptcy cases simultaneously when they involve the same debts or the same assets, particularly when the debtor has yet to receive a discharge in the first case.[14] In reaching this conclusion, reliance is placed upon the United States Supreme Court's decision in Freshman v. Atkins, 269 U.S. 121, 123 (1925), which held that, as a general rule, "the law will not tolerate two suits at the same time for the same cause."

When a bankruptcy case has substantially completed, courts take divergent views as to whether a new case can be commenced before the original one is concluded. A majority of courts adopt the "single estate" rule, a court-created doctrine that prohibits simultaneous

---

[13]   Dkt. No. 12.

[14]   In re Turner, 207 B.R. 373, 378 (2d Cir. BAP 1997) (noting "universal agreement" that a chapter 13 case is a nullity when it is filed before the debtor receives a discharge in a pending chapter 7 case).

4

bankruptcy cases, even if each bankruptcy estate is comprised of different debts.[15] The "single estate" rule is easy to apply because it prohibits a debtor from commencing a new bankruptcy case while a prior case remains pending.[16] Under this approach, the filing of the second case constitutes an abuse of the bankruptcy process.[17]

A minority of courts adopt a more flexible approach to simultaneous filings. Rejecting a *per se* rule against concurrent filings, these courts instead focus on whether the second case interferes with the administration of the bankruptcy estate in the first case.[18] If the two bankruptcy estates are "totally distinct and separate" from each other, courts utilizing this approach will allow both cases to proceed simultaneously.[19] Under the minority view, a debtor can commence a chapter 13 case in the face of a pending chapter 7 proceeding, provided that the debtor already received a chapter 7 discharge and any remaining tasks in the chapter 7 case are purely administrative. This permissive rule is supported by the rationale that debtors should not

---

[15] Turner, 207 B.R. at 378 ("[A] debtor possesses only one estate for the purpose of trusteeship and each bankruptcy must be administered as a single estate under a single chapter of the Bankruptcy Code."); In re Lord, 295 B.R. 16, 18 (Bankr. E.D.N.Y. 2003); In re Bodine, 113 B.R. 134, 135 (Bankr. W.D.N.Y. 1990) (citing In re Russo, 94 B.R. 127, 129 (Bankr. N.D.Ill. 1988) ("This Court considers it a misuse of the bankruptcy process to file once case, then, failing to achieve the intended goals, to refile a second case."); In re Heywood, 39 B.R. 910 (Bankr. W.D.N.Y. 1984).

[16] Turner, 207 B.R. at 378 (citing In re Kosenka, 104 B.R. 40, 46 (Bankr. N.D.Ind. 1989)) ("the filing of simultaneous petitions is 'contrary to the obvious contemplated function of the Bankruptcy Code to resolve a debtor's financial affairs by administration of a debtor's property as a single estate under a single chapter within the code.'").

[17] In re Mannucci, 2013 WL 3294093, *2 (Bankr. M.D. Pa. June 28, 2013) (citing Sood v. Business Lenders, LLC, 2012 WL 2847613, *4 (D. Md. July 10, 2012)); Lord, 295 B.R. at 20 ("[T]he fact that the debtor filed after receiving a [c]hapter 7 discharge does not change this Court's view that debtor's filing of the [c]hapter 13 petition constitutes an abuse of the bankruptcy system."); Bodine, 113 B.R. at 135.

[18] In re Montes, 526 B.R. 397, 402 (Bankr. D.N.M. 2015); In re Hodurski, 156 B.R. 353, 356 (Bankr. D.Mass. 1993); Kosenka, 104 B.R. 40; In re Ragsdale, 315 B.R. 691, 693 (Bankr. E.D. Mich. 2004).

[19] Id., 315 B.R. at 693; see also Lord, 295 B.R. at 19 ("[W]here simultaneous [c]hapter 7 and [c]hapter 13 petitions relate to different assets and different debts, the minority find that a court may properly entertain simultaneous cases for the same debtor.").

5

be denied access to bankruptcy relief when nominal administrative or procedural delays have prevented the chapter 7 case from concluding.[20]

Our Court of Appeals has yet to address the issue of concurrent bankruptcy cases. Courts within this Circuit that have confronted the matter have declined to adopt a *per se* prohibition, opting instead to examine whether the existence of a second bankruptcy case would undermine or impair the administration of the original bankruptcy proceeding. Judge France of the United States Bankruptcy Court for the Middle District of Pennsylvania observed that "even courts that reject a per se bar to maintaining simultaneous cases permit the second case to go forward *only when it does not interfere with the administration of the first case*."[21] In Mannucci, the debtors attempted to satisfy the claims of the chapter 7 estate through a chapter 13 plan of reorganization. Because the chapter 13 case did not address assets and debts different than those included in the chapter 7 estate, the debtor's chapter 13 case was dismissed.[22] Likewise, in Prudential Ins. Co. of America v. Colony Square, 29 B.R. 432, 437 (W.D. Pa. 1983), Judge Bloch of the United States District Court for the Western District of Pennsylvania relied upon the Supreme Court's Atkins decision to conclude that "when a bankruptcy action is pending, a bankruptcy court cannot entertain or consider a second petition involving the same debts."

The Court need not determine whether to adopt the "single estate" rule or the permissive rule in this case. Under the Supreme Court's direction in Atkins, simultaneous cases cannot proceed if each bankruptcy estate endeavors to administer the same assets to pay off the same claims. The record in this case establishes that the assets in Chain's chapter 13 bankruptcy

---

[20] See Hodurski, 156 B.R. at 356.

[21] In re Mannucci, 2013 WL 3294093, *3 (Bankr. M.D. Pa. June 28, 2013) (emphasis added).

[22] Id.

6

estate are the same as those in his chapter 7 case.[23]  Moreover, Chain's chapter 13 plan proposes to make payments to many of the secured and priority creditors who stand to receive a distribution in the chapter 7 case. In all, at least five creditors conceivably hold the same claims against both estates.[24]

Chain argues that he should be afforded an opportunity to cure the arrearages on his real property through a chapter 13 plan. In support of this position, he relies upon In re Cowan wherein the debtors were allowed to pursue a chapter 13 case to retain possession of an automobile that otherwise would have been liquidated by the chapter 7 trustee in a prior case.[25] When the Cowan chapter 7 case began, the car was encumbered by a lien that was subsequently avoided. Finding that the chapter 13 plan was proposed in good faith due to a significant change in circumstances (the lien avoidance) and produced a result which was functionally equivalent to that available in the chapter 7 case, the bankruptcy court confirmed the Cowans' chapter 13 plan.

This Court is unpersuaded by the holding in Cowan and finds the facts of this case to be materially different. Unlike Cowan, Chain failed to act promptly to salvage the properties from liquidation. In the five months between the conversion of his case and the execution of the Carve-Out Agreement, Chain made no effort to protect any interest he might claim in the properties. Rather than pursue a conversion to chapter 13, he was content to obtain a chapter 7 discharge, perhaps with the mistaken belief that the chapter 7 trustee would eventually abandon

---

[23] Schedule A of Chain's chapter 7 petition identifies eight parcels of real property, including Chain's residence, with an aggregate value of $540,000. See Case No. 14-23630-GLT, Dkt. No. 43. By comparison, Chain's chapter 13 schedules discloses his interest in the same eight properties, albeit at a significantly reduced cumulative value of $165,000. See Dkt. No. 11.

[24] Although the amount of their claims may have increased, Scottdale, the Westmoreland County Tax Claim Bureau, the Pennsylvania Department of Revenue, the Pennsylvania Department of Labor and Industry, and the Internal Revenue Service each hold secured or priority claims in the chapter 13 case that relate to the same underlying obligations existing in the chapter 7 case.

[25] See In re Cowan, 235 B.R. 912 (Bankr. W.D. Mo. 1999).

7

the properties.[26] Moreover, Chain's chapter 13 plan proposes direct payments to creditors in the chapter 7 estate, bypassing the chapter 7 trustee altogether. By contrast, the Cowans commenced their chapter 13 case within days of discovering the lien defect (long before the trustee could obtain possession of the vehicle) and their chapter 13 plan classified the chapter 7 trustee as a "secured" creditor.[27]

When the chapter 7 trustee expressed his intent to liquidate the properties and sought approval of the Carve-Out Agreement, Chain again took no action. Although he was served with the trustee's motion, Chain neither opposed the Carve-Out Agreement nor sought relief from the *Carve-Out Order*.[28] Through his inaction, Chain gave the appearance that he no longer desired to retain the properties, and the chapter 7 trustee, relying on the *Carve-Out Order*, proceeded to market the assets accordingly.

Unlike those instances where simultaneous cases are allowed to proceed, Chain's chapter 7 case remains open because the trustee is actively liquidating the estate's assets. This is not a mere ministerial act, but rather, it represents one of the core functions of the bankruptcy process.

---

[26] Although Chain no longer had an absolute right to convert the case for a second time, the Court may certainly consider an additional conversion after carefully scrutinizing a debtor's circumstances. In re Masterson, 141 B.R. 84, 87-88 (Bankr. E.D. Pa. 1992) (citing In re Trevino, 78 B.R. 29, 32 (Bankr. M.D. Pa. 1987); In re Sensibaugh, 9 B.R. 45, 47 (Bankr. E.D. Va. 1981); and In re Hollar, 70 B.R. 337, 338 (Bankr. E.D. Tenn. 1987)).

[27] Id. at 914.

[28] Chain belatedly questions whether he would have standing to challenge the *Carve-Out Agreement*. While the distribution of estate assets seldom impacts the pecuniary interests of a chapter 7 debtor, the debtor may nonetheless have standing to object if he can establish the reasonable possibility of a surplus or payment on an allowed exemption that might affect his pecuniary interests. See In re Robb, 534 B.R. 354, 357 (8th Cir. BAP 2015); In re Amir, 436 B.R. 1, 10 (6th Cir. BAP 2010); In re Rake, 363 B.R. 146, 151 (Bankr. D. Idaho 2007). Since the issue was not raised when the *Carve-Out Agreement* was approved, the Court will not give it further consideration at this time.

There is no plausible way both estates can be administered concurrently without interfering with the other. The chapter 7 trustee's professionals are actively marketing the properties and communicating with prospective purchasers, but their efforts were stymied once the chapter 13 case was filed.[29] Absent the ability to sell estate assets, the chapter 7 estate is deprived of its primary source of funding. Through the sale of each parcel, the chapter 7 trustee can satisfy the delinquent real estate taxes and make distributions on Scottdale's secured claims. Yet, these are some of the very same claims Chain proposes to pay through his chapter 13 plan. In short, the overlay of a chapter 13 case on top of an existing chapter 7 proceeding will confuse creditors, increase administrative expenses, and unnecessarily complicate a relatively small estate. As explained by the United States Bankruptcy Court for the District of Massachusetts:

> The problems that simultaneous cases raise include confusion among creditors as to the necessity and procedure for filing of claims, difficulties in determining in which estate assets belong, and the entitlement of the [c]hapter 7 trustee and other professionals to fees and commissions. Moreover, if the [c]hapter 7 case is a so-called "asset" case in which the trustee is liquidating assets or recovering voidable transfers for distribution to creditors, creditors may not wish to disrupt that proceeding or see assets turned over to the [c]hapter 13 estate, preferring instead to see the [c]hapter 7 completed in order to obtain their pro rata distribution.[30]

Similar concerns exist in this case. Chain's chapter 7 case is an "asset" case in which the trustee is liquidating assets for the benefit of creditors. Allowing the chapter 13 case to proceed would unnecessarily hinder the chapter 7 trustee's ability to fully administer the chapter 7 estate and blur the distinctions as to which estate is accountable for maintaining the assets. With concurrent cases, the prospect of duplicative fees and expenses must also be considered. Trustees appointed

---

[29]  Although Chain argues that the chapter 7 trustee has made no progress in procuring a purchase offer, the record is devoid of any evidence of dilatory conduct on the part of either the chapter 7 trustee or his professionals.

[30]  In re Hodurski, 156 B.R. 353, 356 (Bankr. D. Mass. 1993).

in both cases will expect payment for their role in the administration of the estates, thereby adding another layer of expense.[31]  Considering these factors, payments to creditors may not only be delayed, but the anticipated recovery will be reduced.

The Court also finds no advantage in bifurcating the assets among the two bankruptcy estates.  Because some of the properties are cross-collateralized, it would be difficult to coordinate and administer part of the collateral in a chapter 13 proceeding while the remaining parcels are liquidated by the chapter 7 trustee.  To do so would likewise run afoul of the Carve-Out Agreement, which contemplated the liquidation of all parcels as part of a packaged deal.

In sum, the bankruptcy process is ripe for abuse if cases are allowed to proceed simultaneously under these circumstances.  While Chain's efforts to preserve possession of certain property is understandable, it does not ameliorate the fact that he commenced the chapter 13 case without warning and made no prior attempt to alter the progression of events in his chapter 7 case.  By commencing a new case, Chain attempted to wrest assets away from the chapter 7 estate when he failed to obtain his desired objective in that case.[32]  Because the concurrent chapter 13 case will interfere with the progress of the pending chapter 7 estate and cause confusion among the creditors, the Court cannot allow Chain's chapter 13 case to proceed.  Accordingly, the Court will grant the chapter 13 trustee's motion and dismiss the chapter 13 case.

## V.

The Court now considers whether Chain's counsel acted in bad faith by commencing the chapter 13 case in the face of a pending chapter 7 proceeding.  While it is

---

[31]   Mannucci, 2013 WL 3294093, *3.

[32]   Bodine, 113 B.R. at 135.  As some courts have observed, "[t]he only rationale for not converting an open case and filing a new petition is the creation of a new automatic stay." Turner, 207 B.R. at 379.

10

acknowledged that a majority of courts find this practice to be an abuse of the bankruptcy process, others have allowed it. In the absence of controlling authority from our Court of Appeals on the subject, the Court is unable to conclude that Chain's actions warrant the imposition of sanctions under the factual circumstances of this case.

The chapter 13 trustee also seeks disgorgement of a $1,000 retainer paid to Chain's attorney.[33] She argues that Chain's attorney was disqualified from representing him due to his unpaid administrative claim for legal fees in the chapter 7 case. The Court finds no basis for disgorgement because, as Chain's counsel correctly observes, his pre-conversion legal fees were discharged in the chapter 7 case.[34] To the extent any conflict existed, Chain's counsel also agreed to waive his claim in the chapter 7 case. As all other issues raised by the chapter 13 trustee are rendered moot in light of the Court's decision to dismiss the chapter 13 case, the trustee's request for disqualification is denied.

### VI.

For the reasons expressed above, the Court will grant the chapter 13 trustee's motion to dismiss and deny her motion for disqualification and disgorgement. In light of the Court's ruling, the chapter 7 trustee's motion to dismiss and his motion to abandon are denied as moot.

An appropriate *Order* will issue.

Dated: September 30, 2016

_____
GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

---

[33]   See Dkt. No. 22. According to the disclosure filed under Bankruptcy Rule 2016, the retainer actually consisted of a payment of $310 applied toward the case filing fee and a legal retainer of $690. Dkt. No. 11.

[34]   See 11 U.S.C. §§ 348(b), 727(b).

11

<u>Case administrator to mail to:</u>
Debtor
David A. Colecchia, Esq.
Ronda J. Winnecour, Esq.
Charles O. Zebley, Esq.
Office of the U.S. Trustee